RICHARDSON *versus* WILLIAMS.

The rate of interest in any one of the United States, is not a matter which the Courts *ex officio*, can notice, but is a question of fact, to be ascertained by a jury.

The Courts are not bound judicially to know, that, an instrument declared on, as made "at Virginia, to wit, in Greene county," was executed in the *State* of Virginia—and where nothing is shewn by which to infer that the State of Virginia was meant, it will be presumed that "Virginia" was some place in the county, where the action was brought.

Debt was commenced by Williams, in Greene Circuit Court, on a sealed note. The plaintiff declared on the instrument, averring the same to be made at "Virginia, to wit, in Greene county." After judgment by default, for want of plea, Richardson took a writ of error to this Court. The question here, among other immaterial assignments of error, was, whether the Court below erred in rendering judgment for the plaintiff, without a jury, as the instrument declared on was executed in the State of Virginia; and the interest of that State could not be computed without a jury having first ascertained the rate, there allowed by law.

STEWART, for Plaintiff.—ELLIS, *contra.*

By Mr. Chief-Justice SAFFOLD:

This suit was instituted by Williams, in Greene county. The action is debt, on a sealed instrument, for three hundred dollars, which, from the indorsement on the writ, appears to have been credited with fifty dollars, in 1820. The declaration is in the usual form, averring an indebtedness to the amount of the bond: thus—"For that whereas, the defendant, Richardson, and one Paulin Anderson," (against whom this suit is not brought,) "heretofore, to-wit, on the

22d day of March, 1819, at Virginia, to wit, in Greene county, by their certain writing obligatory, sealed with their seals, and now shewn to the Court here," &c. acknowledged themselves indebted in the said sum of money, " and if not punctually paid, to carry interest from the date." The record further shews, that at the trial term, the parties came by their attornies, and the defendant saying nothing in bar, judgment was rendered against him. It also appears that the writ had been duly executed.

Richardson, the defendant below, having sued out this writ of error, assigns as causes, various objections to the declaration and judgment.

1st. That the debt declared for, and that recovered, are variant.

3d. The bond is not made part of the record, nor is oyer given of it, so that the Court can know if judgment was given for the proper amount.

4th. The judgment is for too much.

6th. Interest is recovered by way of penalty.

With respect to these four assignments, it will suffice to say, no oyer was craved of the bond sued on. The declaration contains the usual *profert in curia.* No discrepancy is perceived between the debt sued for, and that for which the judgment was rendered, unless it be, that the judgment is for less than appears to have been due, of which the plaintiff in error cannot complain. Nor does it appear that interest was computed before the maturity of the debt. The amount is believed not to exceed *six per cent.* from the time appointed for payment until the date of the judgment; from which it results, that if the Court was authorised, under the circumstances, to allow any rate of interest, there was no error on any of the points noticed.

The 5th assignment is, that the plaintiff was dead before the commencement of the suit, which was un-

known to the defendant during the pendency thereof. The opinion of the Court, on this, as a preliminary point, has already been expressed—that the exception cannot prevail in this Court.   We think, if the fact be true, which is not admitted by the adverse counsel, it constituted *error in fact*, which might have been resisted in the Court below ; and as the record shews nothing of the kind, but implied the contrary, it is an objection which we are not at liberty to notice.

2. The assignment, numbered second, deserves more consideration.   It is, that the Court erred, in giving judgment for damages or interest, without a jury, as the bond was made in Virginia, and the Court cannot judicially know what is the rate of interest in that State.

If we are authorised to assume the fact, that the instrument was made in the *State of Virginia*, the exception is well founded in principle, and authority. This Court, as well as others, has frequently decided, that the rate of interest in a different State, is a matter which, the Courts *ex officio*, cannot take notice of ; that it is a fact which must be ascertained by a jury. But the question here, is, can the Court judicially know, or assume the fact, that this bond was executed out of this State.   The declaration charges, that it was made "at Virginia, to-wit, in the county of Greene," State of Alabama.   The *State of Virginia* is not expressed : the words " at Virginia," are mentioned in the usual form of laying a *venue* within the jurisdiction ; and which, however unnecessary in transitory actions, is a very common mode of declaring.— Then, as the *Virginia* in question, is described, and averred in the declaration to be, a place in the county of Greene, can the Court judicially know the contrary ?   By what warrant can we say there is not in

31

that county some district or settlement—some town, hamlet, or villa, known and called "Virginia."

In the case of *Garner* vs. *Tiffany, Wyman & Co.*[a] this Court said, where it appeared on oyer that the note sued on was executed at "Fayetteville," that the Court could not judicially know, that that place was not in this State; on the contrary, was bound, from the description given of it in the declaration, to conclude it was in the county of *Madison*. Though it may appear more natural and customary to name a *place* "Fayetteville" than "Virginia," the principle is the same in reference to either. Had the declaration described the contract as having been made in "the State of Virginia," the principle would have been different; it would have been the same as recognised by this Court, in the case of *Peacock* vs. *Banks*,[b] of *Evans* vs. *Irvin & Dunlap*,[c] and of *Evans* vs. *Clark*.[d]

Courts may judicially notice the geographical divisions of the Union into separate States, and of their own States into counties; but the *topography* of the country is subject to a different rule. In respect to the latter, the Courts will not judicially know the contrary of facts, implied by the state of the pleadings. In this case, the judgment by *nil dicit*, implied an admission of a contract, in all material respects, such as described in the declaration. This was the doctrine of the Court of King's Bench, in *Deybel's* case.[e]—There, the prisoner was confined on a charge of having been found on board a vessel within four leagues of the coast between the *North Foreland* and *Beachey Head*, or within eight leagues of some other part of the coast, in violation of an act of Parliament. The return on the writ of *habeas corpus*, did not state that the vessel was discovered within eight leagues of the coast of the county of *Suffolk*, but within eight leagues of

[a] 1 Ala. R. 167.

[b] Ala. Rep. 387.
[c] Porter's Rep. 1st ed. 390.
[d] 1 ibid. 383.

[e] 4 Barn. & Al. 243—6 Searg. & Lowb. 413.

a place in a part of the coast, called *Suffolk*. The Court held that they could not say, judicially, that there was no place on the coast between the *North Foreland* and *Beachey Head*, which was called *Suffolk*. And as respects an additional averment in the return, that the vessel was discovered within eight leagues of *Orfordness*, in the county of *Suffolk*, they said they could not know whether *Orfordness*, which was averred to be part of the county of *Suffolk*, might not be an isolated part of it, situated on the coast, between the *North Foreland* and *Beachey Head ;* and if so, there was nothing on the return to shew. that the vessel was discovered within the limits mentioned in the act of Parliament. That the proper course would have been " to have stated negatively, that the vessel was found within eight leagues of a part of the coast of Great Britain, not between the *North Foreland* and *Beachey Head*, to wit, within eight leagues of *Orfordness*, in the county of *Suffolk*."

It is true, on that occasion, the Court held great strictness to be necessary, because the liberty of the party was involved ; yet they professed to act on the general principle of judicial cognizance, and said it could not extend to the particular parts of counties, and their local situation.—(See also, *Henry* versus *King*.) [2 Barn. & Al. 301.]

In this case, a plea of the general issue, or any other, which did not imply an admission of the contract, as charged in the declaration, would have created a necessity for the intervention of a jury to ascertain, as well the debt as damages.

But it is contended, that in *Boardman* vs. *Ewing*, this Court adopted a different rule. There, it will be observed, the case was essentially different. The question of locality did not arise on the pleadings :

there was no averment that "the city of New York" was in the State of Alabama. The question related alone to the sufficiency of an affidavit to take the depositions of a witness, who was therein stated to reside in the city of New York. The *depositions* could be legally taken only on a shewing of the non-residence of the witness. The affidavit, from the object in view, strongly implied the fact, but it was not expressed, otherwise than by naming the city in which he resided. Thus, on a mere matter of *evidence*, the question was presented, whether we would understand the place to be the *City of New York,* in the State of New York, or some city of the same name in Alabama. I consider the principle entirely different; and that there is nothing in the case last referred to, inconsistent with the current doctrine, by which we have been, and are yet governed, in reference to the *venue* in pleading.

We say, the judgment must be affirmed.