# Boyd *v.* The State.

| 88 | 169 |
| 103 | 638 |
| 88 | 169 |
| 114 | 303 |

*Indictment for Assault and Battery.*

1. *Schoolmaster's right to punish, and criminal liability for abuse.*—By law, as well as immemorial usage, a schoolmaster is regarded as standing *in loco parentis.* and has the right to administer, in case of misconduct, reasonable and proper punishment to a pupil, having regard to the character of the offense, the sex, age, size, and physical strength of the offender; and while he necessarily has a discretion, determined by the

facts of the particular case, both as to the character and the degree of the punishment, he is liable *criminaliter* for any abuse of his authority, if prompted by malice, or other improper motive, if unreasonably severe, if inflicted with an improper instrument, or if resulting in permanent injury to the pupil.

2. *Trial by court without jury; revision of finding on facts.*—In a prosecution before the Criminal Court of Pike county (Sess. Acts 1888-9, pp. 631-4), a trial by jury being waived, or not being demanded, the finding and conclusion of the judge on the facts is equivalent to the verdict of a jury, and can not be reviewed by this court.

FROM the Criminal Court of Pike.

Tried before the Hon. WM. H. PARKS.

The defendant in this case, a school teacher, was indicted for an assault and battery on Lee Crowder, who was one of his scholars; and the case being submitted to the court without a jury, he was convicted, and fined $25. The material facts are stated in the opinion of the court.

WM. L. PARKS, for the appellant, cited *Skinner v. State*, 87 Ala. 105; *State v. Pendergrass*, 2 Dev. & Bat. 365, or 31 Amer. Dec. 416.

WM. L. MARTIN, Attorney-General, for the State, cited *Wynn v. State*, 87 Ala. 137; *Skinner v. State*, 87 Ala. 105; *Lander v. Sevear*, 32 Vt. 114, or 76 Amer. Dec. 156; *Anderson v. State*, 3 Head (Tenn.) 455, or 75 Amer. Dec. 774; *Patterson v. Nutter*, 78 Me. 509, or 57 Amer. Rep. 818; *Stevens v. Fassett*, 27 Me. 266; 1 Bish. Crim. Law, 88.

SOMERVILLE, J.—The defendant, a schoolmaster, being indicted, was convicted of an assault and battery on one Lee Crowder, a pupil in his school, who is shown to have been about eighteen years of age. The defense is, that the alleged battery was a reasonable chastisement inflicted by the master in just maintenance of discipline, and in punishment of conduct on the part of the pupil which tended to the subversion of good order in the school.

The case involves a consideration of the proper rule of law prescribing the extent of the schoolmaster's authority to administer corporal correction to a pupil.

The principle is commonly stated to be, that the schoolmaster, like the parent, and others *in foro domestico*, has the authority to moderately chastise pupils under his care—or, as stated by Chancellor Kent, "the right of inflicting moderate correction, under the exercise of a sound discretion." 2 Kent's Com. *203-206. In other words, he may admin-

[Boyd v. The State.]

ister reasonable correction, which must not "exceed the bounds of due moderation, either in the *measure* of it, or in the *instrument* made use of for the purpose." If he go beyond this extent, he becomes criminally liable, and, if death ensues from the brutal injuries inflicted, he may be liable not only for assault and battery, but to the penalties of manslaughter, or even murder, according to the circumstances of the case.—1 Archbold's Cr. Prac. \*218; 1 Bish. Cr. Law (7th Ed.), §§ 881-2.

This power of correction, vested by law in parents, is founded on their duty to maintain and educate their offspring. In support of that authority, they must have "a right to the exercise of such discipline as may be requisite for the discharge of their sacred trust."—2 Kent's Com. \*203. And this power, allowed by law to the parent over the person of the child, "may be delegated to a tutor or instructor, the better to accomplish the purpose of education." *Ib.* \*205; 1 Black. Com. \*507.

The better doctrine of the adjudged cases, therefore, is, that the teacher is, within reasonable bounds, the substitute for the parent, exercising his delegated authority. He is vested with the power to administer moderate correction, with a proper instrument, in cases of misconduct, which ought to have some reference to the character of the offense, the sex, age, size, and physical strength of the pupil. When the teacher keeps within the circumscribed sphere of his authority, the degree of correction must be left to his discretion, as it is to that of the parent, under like circumstances. Within this limit, he has the authority to determine the gravity or heinousness of the offense, and to meet out to the offender the punishment which he thinks his conduct justly merits; and hence the parent or teacher is often said, *pro hac vice,* to exercise "judicial functions."

All of the authorities agree, that he will not be permitted to deal brutally with his victim, so as to endanger life, limb, or health. He will not be permitted to inflict "cruel and merciless punishment."—Schouler's Dom. Rel. (4th Ed.), § 244. He can not lawfully disfigure him, or perpetrate on his person any other permanent injury. As said by Gaston, J., in *State v. Pendergrass,* 2 Dev. & Bat. Law, 365; 31 Amer. Dec. 416, a case generally approved by the weight of American authority, "It may be laid down as a general rule, that teachers exceed the limit of their authority, when they cause lasting mischief; but act within the limits of it, when they inflict temporary pain."

[Boyd v. The State.]

There are some well considered authorities, which hold teachers and parents alike liable criminally, if, in the infliction of chastisement, they act clearly without the exercise of reasonable judgment and discretion. The test which seems to be fixed by these cases is the general judgment of reasonable men.—*Patterson v. Nutter*, 78 Me. 509; 57 Amer. Rep. 818. The more correct view, however, and the one better sustained by authority, seems to be, that when, in the judgment of reasonable men, the punishment inflicted is immoderate, or excessive, and a jury would be authorized from the facts of the case to infer that it was induced by legal *malice*, or wickedness of motive, the limit of lawful authority may be adjudged to be passed. In determining this question, the nature of the instrument of correction used may have a strong bearing on the inquiry as to motive, or intention. The latter view is indorsed by Mr. Freeman, in his note to the case of *State v. Pendergrass*, 31 Amer. Dec. 419, as the more correct. "The qualification," he observes, "that the schoolmaster shall not act from malice, will protect his pupils from outbursts of brutality, whilst, on the other hand, he is protected from liability for mere errors of judgment." *Lander v. Seaver*, 32 Vt. 114: 76 Amer. Dec. 156, and note pp. 164-167; *State v. Alford*, 68 N. C. 322; *State v. Harris*, 63 N. C. 1.

Judge Reeves, in his work on Domestic Relations, indorses the same view, asserting that the parent and schoolmaster, in imposing chastisement for cause, must be considered as acting in a judicial capacity, and are not to be held legally responsible for errors of judgment, although the punishment may appear to the trial court or jury to be unreasonably severe, and not proportioned to the offense, provided they act "conscientiously and from motives of duty." "But," he says further, "when the punishment is, in their opinion, thus unreasonable, and it appears that the parent acted *malo animo*—from wicked motives—under the influence of an unsocial heart, he ought to be liable to damages. For error of opinion, he ought to be excused; but for malice of heart, he must not be shielded from the just claims of the child. Whether there was malice, may be collected from the circumstances attending the punishment."—Reeves' Dom. Rel. (4th Ed.), 357-358.

Dr. Wharton, in his work on Criminal Law, thus states the principle: "The law confides to schoolmasters and teachers a discretionary power in the infliction of punish-

[Boyd v. The State.]

ment upon their pupils, and will not hold them responsible, unless the punishment be such as to occasion permanent injury to the child, or be inflicted merely to gratify their own evil passions.   The teacher must be governed, when chastisement is proper, as to the mode and severity of the punishment, by the nature of the offense, the age, size, and apparent powers of endurance of the pupil.   It is for the jury to decide whether the punishment is excessive."—1 Whart. Cr. Law (9th Ed.), §632.

Mr. Bishop adds, pertinent to the same subject: "The law has provided no means whereby a parent, meditating chastisement, can first obtain a judicial opinion as to its necessity, the proper instruments, and its due extent.   In reason, therefore, if he acts in good faith, prompted by pure parental love, without passion, and inflicts no permanent injury on the child, he should not be punished merely because a jury, reviewing the case, do not deem that it was wise to proceed so far." 1 Bish. Cr. Law (7th Ed.), §882.   See, also, Schouler's Dom. Rel. (4th Ed.), §244; 1 Black. Com. *556; 1 Greenl. Ev. §97; 2 Addison on Torts (Wood's Ed.), §840; *Danenhoffer v. State*, 69 Ind. 295; *Com. v. Randall*, 4 Gray (Mass.) 36; *State v. Burton*, 45 Wis. 150.

To the foregoing authorities I may add, as a matter of literary curiosity, rather than legal authority, the following views expressed on this subject by Dr. Samuel Johnson, to his biographer Boswell, as far back as 1772.   Boswell was of counsel for a schoolmaster in Scotland who had been somewhat severe in his chastisement of one of his pupils, and the case was pending on appeal from the Court of Sessions before the English House of Lords, on a proceeding to remove him from his office.   The opinion of this most learned of literary philosophers having been solicited, he discoursed as follows: "The government of the schoolmaster is somewhat of the nature of a military government—that is to say, it must be arbitrary; it must be exercised by the will of one man, according to particular circumstances.   A schoolmaster has a prescriptive right to beat, and an action of assault and battery can not be admitted against him, unless there be some great excess, some barbarity.   In our schools in England many boys have been maimed, yet I never heard of an action against a schoolmaster on that account.   Puffendorf, I think, maintains the right of a schoolmaster to beat his scholars."—Boswell's Life of Johnson, vol. 2, pp. 89, 96.

While, on the one hand, we should recognize that every

[Boyd v. The State.]

child has rights which ought to be protected against the brutality of a cruel teacher, or barbarous parent, on the other, it is equally important not to paralyze that power of correction and discipline by the rod, given, as Blackstone asserts, "for the benefit of education," which has for ages been deemed necessary alike on the part of parents to prevent their children from becoming "the victims of bad habits, and thereby proving a nuisance to the community," and on the part of teachers to preserve that discipline of the schools, without which all efforts to promote the education of the present and future generations will prove a lamentable failure.—Reeves ' Dom. Rel. 367.    No regulation of the school-room, any more than a law of the State, can be successfully enforced without the aid of coercive penalties.    A law without a penalty is in practice a dead letter.    Moderate chastisement is established by immemorial usage as the only available terror to vicious and incorrigible evil-doers, both in the homestead and the school-room; at least in cases where the more humane law of kindness and moral suasion has proved ineffectual.    "Foolishness," said Solomon, "is bound up in the heart of a child, but the rod of correction shall drive it far from him."    "The rod and reproof give wisdom, but a child left to himself causeth shame to his mother." And again: "Train up a child in the way he should go, and even when he is old, he will not depart from it."    These words are as true now as they were a hundred generations ago, when they were uttered by the wise man.    This right of discipline with the rod, administered without malice or immoderation, has been well characterized as a part of the common law of the school-room.    The more thoroughly the right is established, as experience in all discipline shows, the less frequent will be the necessity of resorting to its exercise to enforce obedience to the lawful mandates of the parent, or of the schoolmaster.

We have said this much in order that we may not be misunderstood in the conclusion reached by us, not to disturb the judgment of conviction in this case.    We can not say, under the principles above stated, that the judge of the Criminal Court reached an erroneous conclusion, in adjudging that the defendant exceeded his lawful authority, so as to render himself liable for an assault and battery.

The statute organizing the Criminal Court of Pike county confers upon convicted parties the right of appeal to this court.    But, where a jury is waived, and the judge tries the

facts, the decision of the court upon the facts is, in legal effect, equivalent to the verdict of a jury, and, in the absence of statutory power, will not be reviewed by this court on appeal.—*Bell v. State*, 75 Ala. 25; *Calloway v. The State*, *Ib.* 37; *Knowles v. The State*, 80 Ala. 9; *Wynn v. The State*, 87 Ala. 137. The statute under consideration confers no such jurisdiction on this court.—Acts 1888–89, pp. 631–634, § 15.

It is only where, upon the undisputed facts of the case, with all proper inferences deducible from such facts, a jury would not have been lawfully authorized to find the defendant guilty of the crime charged, that we will review and reverse the judgment of the lower court; in other words, where the whole question raised is reduced to one of law, and the verdict can not, as matter of law, be supported by any reasonable inferences from the evidence. This was the case of *Skinner v. The State*, 87 Ala. 105.

There was evidence in this case from which the inference of malice could have been deduced as influencing the conduct of the defendant in his chastisement of young Crowder, both as to his outbursts of temper, and in the use of improper instruments of correction. Taking, as we must, every reasonable inference which the judge, acting as a jury, could have drawn from the evidence, we take as true, among others, the following facts: That, after the severe chastisement administered in the school-room, the defendant followed Crowder into the school-yard, and struck him with "a limb or stick," and then "put his hands in his pocket, as if to draw a knife;" that, although Crowder did not strike back, but only protested against and resisted castigation, and, after apologizing for the objectionable language imputed to him, asked permission to withdraw from the school, the defendant, after promising not to strike him, "afterwards struck him *in the face* three licks with his *fist*, and hit him several licks over the head with the butt end of the switch." From these blows, the eye of the young man was "considerably swollen," and was "closed for several days." The attending physician testified, that there were "marks on his head made by a stick, in his opinion." One witness asserts, that the defendant declared he "would conquer him (Crowder) or *kill* him." All the witnesses for the State say, that the defendant was apparently very angry all the time, and was very much excited, and after he got through whipping Crowder he remarked, in an excited, angry voice, in the

presence of the school, and others, that he "could whip any man in China Grove beat!" . From this unseemly conduct on the part of one whose duty it was to set a good example of self-restraint and gentlemanly deportment to his pupils, there was ample room for the inference of legal malice, in connection with unreasonable and immoderate correction. Nor was the limb of a tree, of the size indicated by the evidence, nor a clinched fist applied in bruising the pupil's eye, after the manner of a prize-fighter, a proper instrument of correction to be used on such an occasion.

The conviction must accordingly be sustained, without assuming any jurisdiction to review the correctness of the judge's finding on the facts.

Affirmed.