(80 South. 158)

SEMPLE SCHOOL FOR GIRLS v. YIELDING. (6 Div. 378.)

(Court of Appeals of Alabama. Nov. 12, 1918.)

1. TRESPASS ☞8 — RETENTION OF TRUNK — CUSTODY AND CONTROL.

School principal into whose custody and under whose control an infant has been placed by father is not liable for trespass by retention of infant's trunk containing her wearing apparel, upon father's refusal to pay bill; such principal standing in loco parentis to infant and having custody, not only of infant, but her wearing apparel.

2. TROVER AND CONVERSION ☞16—RIGHT TO IMMEDIATE POSSESSION.

In suit for conversion, plaintiff, to have right to maintain action, must have the title to or a special interest in the property entitling him to the right of immediate possession at the time of bringing action.

3. PARENT AND CHILD ☞8 — PROPERTY OF CHILD—ARTICLES TO SUPPORT AND MAINTAIN CHILD.

Articles given child by parent for child's support and maintenance remain parent's property, though child may have possession and a special property in them, and as to all the world, except the parents, has exclusive right to them.

4. TROVER AND CONVERSION ☞17 — ACTION BY CHILD—WEARING APPAREL.

An infant having a special property right in the wearing apparel given her by her father could maintain an action for conversion thereof provided she was entitled to immediate possession at time of bringing action.

5. EVIDENCE ☞35—JUDICIAL KNOWLEDGE—STATUTES OF OTHER STATES.

Courts of this state cannot take judicial cognizance of the statutes of other states.

6. INNKEEPERS ☞13 — LIEN — BOARDING HOUSE KEEPER.

Boarding house keeper has no common-law lien, but must depend for such lien entirely upon the statute.

7. INNKEEPERS ☞13—LIEN—CREATION.

Innkeeper's common-law lien was created by law, and not by contract.

8. INNKEEPERS ☞13—LIEN—PREREQUISITE.

To entitle innkeeper or boarding house keeper to lien, owner of property must be a guest or boarder.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Ante, p. 65.    [2] 199 Ala. 411.

9. INNKEEPERS ⚖═13 — BOARDING HOUSE KEEPER'S LIEN—"BOARDER."

A ward living in the home of his guardian as a member of the family is not a "boarder" within Code 1907, § 4827, giving boarding house keeper lien for unpaid board bill on property of boarder.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Boarder.]

10. SCHOOLS AND SCHOOL DISTRICTS ⚖═8 — BOARDING SCHOOLS—"BOARDER"—LIEN.

A minor child placed in the custody and under the control of a boarding school principal is not a "boarder" within Code 1907, § 4827, giving boarding house keeper lien for unpaid board bill on boarder's property; the principal standing in loco parentis, and being within reasonable bounds the parent's substitute, exercising his delegated authority.

11. SCHOOLS AND SCHOOL DISTRICTS ⚖═8 — BOARDING SCHOOLS—WRONGFUL CLAIM OF LIEN—PUNITIVE DAMAGES.

Boarding school principal who retained trunk containing wearing apparel of minor child placed in her custody under a misapprehension as to her right to retain trunk as a lien, and who did not accompany retention by any acts of outrage, insult, or other misconduct, was not liable for punitive damages in action for conversion.

12. TROVER AND CONVERSION ⚖═58 — MEASURE OF DAMAGES.

Boarding school principal who retained possession of trunk containing wearing apparel of minor child who had been placed in her custody, under misapprehension as to the right of a lien on such goods, without accompanying act of conversion by any act of insult or other misconduct, was liable for the value of property at time of conversion, mitigated by the value of the property at the time of its return and acceptance.

Appeal from Circuit Court, Jefferson County; John C. Pugh, Judge.

Action by Lillian Yielding, pro ami, against the Semple School for Girls. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The plaintiff in the court below (appellee here) was an infant over 18 years of age, living with her parents in Birmingham, Ala. Her father made arrangements with the defendant in the court below (appellant here) for her attendance at a boarding school in New York City for a period of one scholastic year, at an agreed price of $1,000, and in accordance with that contract she was delivered to the appellant, together with such suitable wearing apparel as was necessary, where she remained until the end of the school year, during which time she purchased various other articles of wearing apparel to be added to her wardrobe with money furnished her by her parents, sometimes by one and sometimes by the other. The wearing apparel of the appellee was kept and used by her during the school year, and when she was preparing to return to her home in Birmingham she packed it all in two trunks, both of which remained in the house of the appellant.

The father failed to pay the amount agreed upon for the tuition and board, and after the appellee had purchased her ticket to her home in Birmingham and had notified the expressman to call for her trunks, in which her wearing apparel had been packed, the appellant, through one of the teachers, notified the appellee that her trunks would be held on account of the nonpayment of the amount due for her board and tuition, and the appellant did hold one of these trunks for a period of five or six weeks, but one of them was not held, but came on to the same train with the appellee. After five or six weeks the appellant sent the other trunk to the appellee. The appellant then filed suit against the father for the amount due, and obtained judgment thereon, whereupon the appellee brought suit by attachment against the appellant, claiming damages for the conversion of the property contained in the trunk, which had been detained by the appellant.

The complaint was in six counts. Count 1 claimed for the conversion. Count 2 was in statutory form for trespass. Count 3 was for the breach of a contract. Count 4 was for conversion and claimed added damages for aggravation, inconvenience, humiliation, harassment, and annoyance. Count 5 was in trespass for the wrongful taking of the goods, together with elements of damage for humiliation, etc. Count 6 was for the willful and malicious conversion of goods. There was verdict and judgment for the plaintiff, and from the judgment the defendant appeals.

W. A. Gunter, of Montgomery, and Leader & Ewing, of Birmingham, for appellant.

Beddow & Oberdorfer, of Birmingham, for appellee.

SAMFORD, J. [1] The evidence without dispute discloses that the plaintiff, who was an infant, had been by her father placed in the custody and under the control of the defendant, who was the principal of the school in New York City, and who therefore stood in loco parentis to the infant, having not only the custody of the plaintiff, but also the control and custody of her wearing apparel, during the period of the school year. Under these facts, the retention of the trunk and its contents would not constitute an asportavit, and therefore there was no element of trespass. This being the fact, it will be unnecessary to further notice the claims made in the second and sixth counts.

The claim under the third count is not urged, and therefore it will not be further considered.

This brings us to a consideration of the case as made under the counts claiming for the conversion of the trunk and its contents, together with damages for the willful and malicious conversion as claimed by the plaintiff.

It is contended by the plaintiff that, as the contract was made by the father, and the property held was that of the plaintiff, the holding was illegal, without color of right, and therefore the jury was warranted in finding that the conversion was malicious.

The defendant's pleas were in effect as follows: Plea 1 was a general denial. Plea 2 was also a general denial. Plea 3 is in substance that the defendant had returned the goods to the plaintiff without injury and in the condition in which plaintiff left it, on demand of plaintiff and before the commencement of this suit, and denying that the plaintiff suffered any damage. Plea A was to the effect that the property detained by the defendant was the property of the father of the plaintiff, and was in the possession of the defendant as a boarding house keeper, and was held under a lien given by the law of New York to secure the debt of the father for the board and lodging of the plaintiff, an infant child of the father; that the law of New York giving said lien is in the words of the law of Alabama, evidenced by section 4827 of the Code. Plea B also alleges that the defendant was holding the property as a boarding house keeper, under a lien created by the law of New York, but differs from plea A in that it also alleges that she also ran a school in connection with said boarding house.

There were replications to pleas A and B, alleging that the credit was extended to the father of the plaintiff, and not to the plaintiff.

[2] The law governing ordinary cases of conversion and the measure of damages incident thereto has been so often declared as to render a repetition of those rules unnecessary here. It is a well-recognized rule that the plaintiff in a suit for conversion must have the title or a special interest in the property entitling him to the right of immediate possession at the time of the bringing of the suit. 38 Cyc. p. 2050.

[3] It is also undoubtedly the law that any property acquired by an infant except by its own labor belongs to the infant, as its separate estate, and the parent has no right in such property. Nelson v. Goree's Adm'r, 34 Ala. 565; Alston v. Alston, 34 Ala. 15; Rhoades v. McNulty, 52 Mo. App. 301; Van Epps v. Van Deusen, 4 Paige (N. Y.) 64, 25 Am. Dec. 516—all of which authorities are in line with the authorities cited in appellee's brief. But articles given to a child by the parent by way of support and mainte- nance, in keeping with its condition in life, remain the property of the parent, and do not become the property of a child, although the child may have the possession of them and a special property in them, and as to all the world, except the parent, has the exclusive right to them. Smith v. Abair, 87 Mich. 62, 49 N. W. 509; Wheeler v. St. Jos. & W. Ry. Co., 31 Kan. 640, 3 Pac. 297; Burke v. L. & N., 7 Heisk. (Tenn.) 451, 19 Am. Rep. 618; Prentice v. Decker, 49 Barb. (N. Y.) 21; Richardson v. L. & N., 85 Ala. 559, 5 South. 308, 2 L. R. A. 716; Baltimore Steam Packet Co. v. Smith, 23 Md. 402, 87 Am. Dec. 575; Curtis v. D., L. & W. Railway Co., 74 N. Y. 116, 30 Am. Rep. 271; 20 R. C. L. p. 614.

Of course, as was said in Richardson v. L. & N., supra:

"If he purchases jewels, or other * * * ornaments, or even wearing apparel, and makes an express gift thereof to his wife, independent of and without reference to his marital duty, they undoubtedly would be her separate estate under the statute; also if her wearing apparel is purchased with money which is her separate estate."

But in this case the evidence is without conflict that the trunk and its contents were such articles as would ordinarily be furnished by a parent to a child in the condition of life of the plaintiff, and that these articles were either furnished directly by the parents or with money given to her by them, and therefore created no separate estate in the child, although they were for the use and benefit of the plaintiff, but the plaintiff had no right to them other than to use them for her own well-being; this notwithstanding the conclusion, as testified to by the plaintiff, that she owned the property. The facts as detailed evidence only the special interest in them, as hereinbefore set out.

[4] It has many times been held, under facts similar to those in this case, that the parent could maintain an action for the destruction of the property upon the ground that the title was in the parent. It is also true that, as the plaintiff owned a special interest in the property, if she also had the right of immediate possession at the time of the bringing of this suit, she could also maintain an action for the conversion. 38 Cyc. 2050; 7 Mayf. Dig. p. 910. If, as is claimed by the plaintiff in this case, there was a wrongful assumption of property by the defendant or a wrongful detention of the property by the defendant, which is of itself a conversion, no demand for the property is necessary before the suit can be brought (Brown v. Beason, 24 Ala. 466; Dixie v. Harrison, 163 Ala. 312, 50 South. 284), and the defendant cannot successfully defend against the action for conversion unless she can show a superior right obtained either from the plaintiff or by connecting herself with the superior title of the parent.

This the defendant in this case undertakes to do by pleading a statute of New York state giving to boarding house keepers a lien on the property of the guests for unpaid board bill, and this presents two questions: First. Has the statute as pleaded, and assuming that it is an answer to the complaint, been proven?

[5, 6] Courts of this state cannot take judicial cognizance of the statutes of other states. Garner v. Tiffany, Minor, 167; Peacock v. Banks, Id., 387; Hunt v. Mayfield, 2 Stew. 124; Evans v. Clark, 1 Port. 388; Richardson v. Williams, 2 Port. 239; Crawford v. Simonton, 7 Port. 110; Clarke v. Pratt, 20 Ala. 470; Camp v. Randle, 81 Ala. 240, 2 South. 287. While the plea sets out section 4827 of the Code of Alabama of 1907, and that section of the Code of Alabama is introduced in evidence, there is an entire absence of any evidence that the statute of New York is the same as the statute of Alabama, and as a lien in favor of a boarding house keeper is not a common-law right, but is entirely dependent upon a statute, unless this statute is proven, it cannot be considered in this case.

But, should we presume that the statute of New York relative to liens for boarding house keepers was the same as the statute of Alabama, could this avail the defendant in this case?

[7] An innkeeper was entitled to a lien on the goods of his guests at common law for the amount of his charges. This lien was not created by a contract, but by law. The innkeeper, being obliged by law to receive the guests, is given a lien by the law as a protection (22 Cyc. p. 1089), and this lien has by statute been extended to boarding house keepers, and the term "boarding house keeper" has been defined by our Supreme Court in B. R., L. & P. Co. v. Drennen, 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037, where it is said:

"An inn, when unlicensed, is distinguished from a 'boarding house' in that the guest of the latter is under an express contract at a certain rate, and for a special time, and the keeper of the boarding house may select his guests and fix full terms, while an inn is for the entertainment of all who come lawfully and pay regularly."

[8] It will be observed that one of the prerequisites to a lien either in favor of an inn or a boarding house is that there must be a guest or boarder, and a pertinent inquiry arises as to whether a minor child attending a boarding school under a contract between the parent and the principal of the school is a guest or boarder within the meaning of the law as applied to innkeepers and boarding house keepers.

[9, 10] It is undoubtedly the law that within certain limitations the parent has the custody and control of his infant children, and is chargeable with their support, maintenance, and education, and so long as the child remains in the home of the parent, it would not be seriously contended that the child was a guest or boarder, nor do we think it could be said that a ward living in the home of a guardian as a member of the family is a boarder. The principal of the school to whom has been transferred the custody of a minor child stands in loco parentis, and is within reasonable bounds the substitute for the parent, exercising his delegated authority (Boyd v. State, 88 Ala. 169, 7 South. 268, 16 Am. St. Rep. 31; 35 Cyc. p. 1134), and therefore, when a parent by a contract for the education of his minor child transfers its custody to the principal of a school, and provides for its maintenance and support under the supervision of such principal, the child is not a guest or boarder in the school within the meaning of the statute giving a lien to a boarding house keeper. The relationship is entirely different from that of a guest at an inn or of a boarder in an ordinary boarding house.

Therefore, conceding that the statute of New York had been proven as pleaded by the defendant, under the facts in this case it would not entitle the defendant to a lien either upon the property of the plaintiff or upon the property of the plaintiff's father.

[11] The facts in this case show that the act of conversion was not accompanied by any acts of outrage, insult, or other misconduct of the defendant towards the plaintiff which would justify the imposition of punitive damages by the jury, nor do the facts justify a finding of such willfulness as to evidence such an intentional violation of the rights of the plaintiff as would authorize the jury to find that the defendant acted from malice, nor was there any evidence of an act knowingly, wantonly, and recklessly done, fraught with probable injury to person or property, but it does appear that the father of the plaintiff owed to the defendant $850 on account of the tuition and board of the plaintiff during the school year, and the defendant, under a misapprehension of her rights as against the plaintiff, caused one of two trunks containing the wearing apparel of the plaintiff to be detained for a period of some five or six weeks, after which time the trunk and its contents were returned to the plaintiff without their contents having been in any manner disturbed or used, and the plaintiff received and still retains them.

We recognize the rule and principles as stated in Howton v. Mathiss, 197 Ala. 457, 73 South. 93; Plummer v. Hardison, 6 Ala. App. 525, 60 South. 502; Birmingham Waterworks Co. v. Keiley, 2 Ala. App. 629, 56 South. 838; Bell v. Seales Piano Co., 78 South. 806.[1] But the facts in this case do not justify a verdict for exemplary damages, according to the rules as stated in the fore-

[1] 201 Ala. 428.

going cases. Fields v. Williams, 91 Ala. 502, 8 South. 808.

[12] The rulings of the trial court on the written charges authorizing a submission of this question to the jury were erroneous, and for that reason the judgment must be reversed. The rule for the ascertainment of damages in this case, under the evidence, would be the value of the property at the time of its conversion, mitigated by the value of the property at the time of its return and acceptance by the plaintiff.

. It is unnecessary, we think, to pass upon the questions raised in detail. The foregoing opinion will be sufficient to guide the trial court in a proper disposition of the case.

Reversed and remanded.