958 So.2d 884 (2006)
Carl HARRIS
v.
Crystal MITCHELL.
2050073.
Court of Civil Appeals of Alabama.
August 18, 2006.
Rehearing Denied October 6, 2006.
Certiorari Denied December 8, 2006.
*886 Joel E. Dillard of Baxley, Dillard, Dauphin, McKnight & Barclift, Birmingham, for appellant.
Troy King, atty. gen., and Sharon E. Ficquette and Jennifer M. Bush, asst. attys. gen., for appellee Department of Human Resources.
Alabama Supreme Court 1060126.
PER CURIAM.
Crystal Mitchell was born to Annette Mitchell on January 12, 1984. Crystal's parents were not married. On February 9, 1984, the State of Alabama, on behalf of Annette Mitchell, filed a paternity action against Carl Harris in the Marengo Juvenile Court. Crystal was not a party to the paternity action. On July 6, 1984, the Marengo Juvenile Court determined that Harris was not Crystal's father and entered a judgment to that effect. There was no appeal from the judgment, and neither party filed a motion, pursuant to Rule 60(b), Ala. R. Civ. P., for relief from the judgment.
On December 23, 1996, when Crystal was 12 years old, Annette, as Crystal's mother and next friend, filed in the Jefferson Family Court a complaint for paternity *887 and child support, alleging that Harris was Crystal's father. Harris answered and moved for a dismissal of the complaint, arguing that the action was barred by the doctrines of res judicata and collateral estoppel, as well as laches. On June 28, 2000, the family court determined that Harris was Crystal's father and ordered him to pay $269.70 per month in child support.
Harris appealed to the Jefferson Circuit Court, moved to have the proceedings transferred to the Marengo Circuit Court, and demanded a jury trial.[1] Ultimately, the case was transferred to the Marengo Circuit Court, where a jury determined, on June 28, 2005, that Harris was Crystal's father. The trial court ordered Harris to pay Crystal's mother $33,541.61 in accrued child support.
Harris appeals, raising three issues: (1) that the trial court erred by determining that the doctrines of res judicata and collateral estoppel did not bar the 1996 paternity complaint against Harris; (2) that the trial court erred by concluding that Crystal was not required, in order to attack the 1984 paternity judgment, to file a motion pursuant to Rule 60(b), Ala. R. Civ. P.; and (3) that the trial court erred by awarding $33,541.61 in past-due child support to Annette, who was not a party to the 1996 paternity proceeding.

The Applicability of the Doctrines of Res Judicata and Collateral Estoppel
The trial court correctly determined that the 1996 paternity action against Harris was not barred by the doctrine of res judicata. When a mother has previously filed a paternity action against the alleged father, and the child is neither a party to nor represented in that action, as in this case, the doctrine of res judicata does not bar the child from subsequently asserting a claim against the same man under the Alabama Uniform Parentage Act, § 26-17-1 et seq., Ala.Code 1975 ("the AUPA"), because the mother and the child are not the same parties and are not in privity. See Ex parte Snow, 508 So.2d 266 (Ala.1987); T.K.S. v. State ex rel. M.S.B., 673 So.2d 429 (Ala.Civ.App.1995); and State ex rel. T.G. v. B.L.J., 627 So.2d 449 (Ala.Civ.App.1993). The reverse is also true, i.e., the fact that there was a judgment in favor of the alleged father in a paternity action brought by a child does not bar a subsequent paternity action brought by the mother against the same man under the doctrine of res judicata. See E.J.B. v. State ex rel. A.C., 669 So.2d 992 (Ala.Civ.App.1995).
Harris argues that because the interests of Crystal, Annette, and the State were all effectively represented by the district attorney in the 1984 paternity case, Crystal should be bound by the judgment in the earlier case. We reject that argument because the district attorney who prosecuted the 1984 paternity action could not have "represented" Crystal. On February 9, 1984, when the first paternity action was instituted, the provisions of §§ 26-12-1 through -9 (repealed on May 7, 1984), which was known as the deGraffenried Act, did not authorize a child to be made a party to a paternity proceeding. See Ex parte Snow, 508 So.2d at 267.
Harris also argues that the Alabama Supreme Court recently relaxed the requirement of "mutuality of estoppel" in Ex parte Flexible Products Co., 915 So.2d 34 *888 (Ala.2005), and held that a party in a second action was bound by the judgment in an earlier action, notwithstanding the fact that he was not a party to the first action, because the party was "in privity of blood, estate, or law" with a party to the first action. Harris claims that Crystal is in privity of "blood, estate, and law" with her mother Annette.
Aside from the other distinctions between this case and Ex parte Flexible Products Co., supra (including the fact that this case involves the defensive use of issue preclusion and Ex parte Flexible Products Co. involved the offensive use of issue preclusion), the most obvious distinction between the cases is that Ex parte Flexible Products Co. was not a paternity case. The discussion of privity by the Alabama Supreme Court in Ex parte Flexible Products Co. is academic in light of that court's discussion of privity in Ex parte Snow, specifically as it relates to claims asserted by a mother and a child as to the child's paternity:
"For the parties to be substantially the same in both cases, they `must be either the same, or in privity of estate, blood, or law with the original parties.' Lott v. Toomey, 477 So.2d 316, 319 (Ala. 1985). [The child] was not a party to the paternity action brought by [the mother], nor was she represented by a guardian ad litem in that proceeding. Thus, unless [the child] and [the mother] are in privity, res judicata will not apply. As stated by this Court in Tatum v. Kelley, 481 So.2d [1132,] 1136 [(Ala. 1985)],
"`[f]or privity to exist between two people, there must be an identity of interests between them. Butler v. Michigan Mutual Ins. Co., 402 So.2d 949, 953 (Ala.1981). "Privity" has been defined as "a mutual or successive relationship to the same rights of property." Sims v. City of Birmingham, 254 Ala. 598, 607, 49 So.2d 302, 310 (1950).'
"`"[P]rivity, for purposes of judicial finality, does not normally arise . . . from the relationship between parent and child."' Brown v. Terry, 375 So.2d 457, 458-59 (Ala.1979) (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.414[11] (2d ed.1974), ¶ 0.411[11] in 1984 edition)
"The interests of [the child] in establishing the existence of the father and child relationship are different from the interests of [the mother] in bringing the prior paternity action. If [the mother's] action had been successful, she possibly could have received a judgment for support benefits on behalf of the child and a judgment for the reasonable expenses of her pregnancy and confinement. Code 1975, § 26-12-4 (repealed May 7, 1984). [The child], on the other hand, has personal interests in an adjudication of paternity that are independent of the interests of her mother. In addition to an inherent right to continuing support from her father, see Northcutt v. Cleveland, 464 So.2d 112 (Ala.Civ.App.1985), [the child's] right to inherit from her natural father through intestate succession will be established by a judicial determination of paternity. Abrams v. Wheeler, 468 So.2d 126 (Ala.1985). A paternity proceeding may also directly affect [the child] in other important matters, including her custody, the knowledge of her heritage, and the determination of an accurate family medical history. Settle v. Beasley, 309 N.C. 616, 308 S.E.2d 288 (1983). Because there is not an identity of interests between [the child] and [the mother], they are not in privity, and res judicata will not apply to bar [the child's] claim."
Ex parte Snow, 508 So.2d at 268.

Rule 60(b) Motion
The trial court correctly determined that Crystal was not required to file *889 a Rule 60(b) motion in order to attack the 1984 paternity judgment. "The purpose of Rule 60(b) is to `relieve a party or a party's legal representative from a final judgment. . . .'" Rowe v. Dunn, 949 So.2d 146, 149 (Ala.Civ.App.2006) (quoting Rule 60(b)) (emphasis added).
Because Crystal was not a party to and was not bound by the 1984 paternity judgment, she had no reason to seek relief from that judgment.

The Child-Support Award
The trial court awarded $33,541.61 in past-due child support to Crystal's mother, Annette. Harris argues that the court erred by awarding the past-due sum to Crystal's mother, who was bound by the 1984 paternity determination in his favor but who was not a party to the 1996 paternity proceeding.
A final judgment in a paternity case must include an order of child support. See § 26-17-14(a), Ala.Code 1975; and Washington v. State ex rel. King, 537 So.2d 967 (Ala.Civ.App.1988). Section 26-17-14(e) provides, in pertinent part, that "[s]upport orders may be in a lump sum amount if awarded against the appropriate party as a judgment representing an accrued arrearage. . . ." The statute does not specify or limit the parties to whom lump-sum payments for the past care and support of the child should be made.
We conclude that Harris does not have standing to object to the trial court's designation of the person to whom payment should be made. A party lacks standing to invoke the power of the court in his behalf in the absence of "a concrete stake in the outcome of the court's decision." Brown Mech. Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala.1983) (quoted in Ex parte Izundu, 568 So.2d 771, 772-73 (Ala.1990)). Any error regarding the recipient of the child-support award is a matter for correction between Crystal and her mother Annette. Cf. Topline Retreads of Decatur, Inc. v. Moore, 484 So.2d 1090, 1091 (Ala.Civ.App.1985)(concluding that an employer who was ordered to pay a workers' compensation award to an injured employee had no standing to object to the attorney fee awarded to the employee's attorney because, the court held, the employee "`must bear the whole fee out of compensation awarded,' [and] any error regarding the attorney's fee award is a matter for correction between the employee and his attorney. `It is no basis for complaint on appeal by the employers.'" (quoting Rush v. Heflin, 411 So.2d 1295, 1297 (Ala.Civ. App.1982))).
"`Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.' National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). `"[L]ack of standing [is] a jurisdictional defect."' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) (quoting Tyler House Apartments, Ltd. v. United States, 38 Fed.Cl. 1, 7 (Fed.Cl.1997)). `[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.' Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)."
Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala.2003).
The judgment of the Marengo Circuit Court is affirmed.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially, with writing, which BRYAN, J., joins.
*890 MURDOCK, Judge, concurring specially.
But for the decision in Ex parte Snow, 508 So.2d 266 (Ala.1987), it would seem that the doctrine of res judicata, or the doctrine of collateral estoppel, should apply to the present case. Carl Harris undoubtedly relied upon the initial paternity judgment, as would any alleged father who prevails in a paternity action, and proceeded with his life and structured his financial affairs accordingly. Moreover, it was indeed the child's rights or interest that the mother and the State were pursuing when the initial paternity action was filed. See, e.g., Bradley v. Division of Child Support Enforcement ex rel. Patterson, 582 A.2d 478, 481 (Del.1990) ("The private interests of the father, the mother, and the child are at stake in any paternity litigation, even one initiated by the State. . . . The issue to be resolved in any paternity proceeding is whether the putative father is, in fact, the child's parent. . . . Consequently, a mother and/or a public authority are representing the child's interests with respect to paternity and support, whether or not the child is actually made a party."). In fact, but for a child's alleged rights or interests in establishing who his or her father is, neither the mother nor the State would have any interest in a paternity action. It is the child's rights or interests that are litigated in a paternity action. This would appear to be no less true merely because, as in both Snow and in the present case, the prior paternity action was filed at a time when the paternity statute did not authorize the child to file an action on his or her own behalf. See E.I.B. v. J.R.B., 259 N.J.Super. 99, 611 A.2d 662 (App.Div.1992); and Slocum ex rel. Nathan A. v. Joseph, 183 A.D.2d 102, 588 N.Y.S.2d 930 (1992).
I note that there is a split of authority as to whether the interest of a child and those of the mother or the State in a paternity action can be said to coincide sufficiently for a court to conclude that privity exists for purposes of applying the doctrine of res judicata. Many courts have held, or indicated that they would hold, that privity between the child and the mother or the State exists when the prior judgment was the result of a trial on the merits, as happened in the present case. For example, in E.I.B. v. J.R.B., 259 N.J.Super. at 104-08, 611 A.2d at 664-67, the court stated:
"We reject the trial court's view that the mother's representation of E.I.B. was inadequate because her motivation in bringing the first paternity action was primarily economic while the child's motivation encompasses a host of non-economic interests, including knowledge of family medical history and the basic human need to know one's heritage. As the court noted in Bradley v. Division of Child Support Enforcement ex. rel. Patterson, 582 A.2d 478, 482 (Del.1990), `[i]rrespective of the distinctions between the totality of rights in which a child may be interested, as opposed to the rights that are sought to be enforced by a mother or a public official, the fact remains that the putative father's paternity of the child is the issue being litigated in an action initiated by any one of them.' . . .
". . . .
"Our conclusion that E.I.B. is bound by the results of the prior paternity action brought by her mother on her behalf is supported by the decisions in most other jurisdictions in which the same or a similar issue has been presented. . . .
". . . .
"With only a few exceptions, the cases which have held that a child was not in privity with a parent have involved prior *891 paternity actions which were not actually litigated. . . .
". . . .
"The only cases brought to our attention in which a subsequent paternity action on behalf of a child has been found not to be barred under principles of res judicata or collateral estoppel by a prior unsuccessful action actually litigated on the child's behalf in conformity with state law are Ex Parte Snow, 508 So.2d 266 (Ala.1987) and Settle By and Through Sullivan v. Beasley, 309 N.C. 616, 308 S.E.2d 288 (1983). However, these cases represent the minority view and in our opinion fail to accord sufficient weight to the interests of both a putative father and the courts in finality once there has been an adjudication of non-paternity in a proceeding in which the child's interests have been adequately represented."[2]
Likewise, in Guziejka v. Desgranges, 571 A.2d 32 (R.I.1990), the Rhode Island Supreme Court stated:
"[T]here exists a privity relationship between a mother or a public officer who brings a paternity action and the child, whether named in the action as a party or not. It would be unconscionable to allow repetitious litigation of the same issue solely on the ground that the formal party in interest is the child rather than the mother or a public officer who, whether explicitly or not, is representing the child's interest in respect to paternity and support. The distinction here should be one of substance and not of form."
571 A.2d at 34 (emphasis added). The court went on to hold, however, that because the prior paternity action had not resulted in an adjudication on the merits, but had ended as the result of a procedural default by the mother, the child would not be precluded from prosecuting a paternity action. Guziejka, 571 A.2d at 35. Other courts have followed the same rationale as E.I.B. and Guziejka. See, e.g., Department of Human Servs. ex rel. Davis v. Seamster, 36 Ark.App. 202, 820 S.W.2d 298 (1991); Bradley, supra; State ex rel. Ricks v. Ricks, 530 So.2d 370 (Fla.Dist.Ct.App. 1988) (holding that a child had no right to file a paternity action when the mother's prior paternity action had been adjudicated on the merits); Draper v. Truitt, 250 Ill.App.3d 654, 621 N.E.2d 202, 190 Ill.Dec. 333 (1993); T.R. v. A.W., 470 N.E.2d 95, 97 (Ind.Ct.App.1984) ("From the child's perspective, the imposition of preclusion will not dilute any rights not already forwarded by her mother in the first suit. The present statute, by joining the mother, child, and putative father as necessary parties to paternity actions avoids the problem now considered. It does not, however, extend to the parties or their privies a new cause of action where there cases have been fully litigated under the prior statute. For these reasons, the doctrine of issue preclusion bars retrial of this case."); O'Bannon ex rel. O'Bannon v. Azar, 506 So.2d 522 (La.Ct.App.1987); Department of Human Servs. ex rel. Boulanger v. Comeau, 663 A.2d 46, 48 (Me.1995) ("When a paternity action is litigated to completion, the differing interests of the mother that may have motivated the action are no longer relevant, and the child's interest is adequately represented even if the child is not made a party to the action."); Johnson v. Hunter, 447 N.W.2d 871, 876-77 (Minn. 1989) ("Because [the child] was not named as a party and was unrepresented in the 1969 action and because the issue of parentage *892 has never been reached, it is difficult to say [the child] had an adequate opportunity to be heard when her mother failed to appear for trial. At that point their interests differed. . . . Unless a child's specific interests on paternity are addressed on the merits, a separate cause of action will be available to such child in another proper action." (emphasis added)); Opinion of the Justices, 131 N.H. 573, 581, 558 A.2d 454, 458 (1989) (recognizing that although New Hampshire statutes authorized a paternity action by the mother, the child, or a public authority charged with supporting the child, "a judgment in a paternity action obtained against one of these parties may be given preclusive effect against all, since action by any one of them asserts the child's claim, or subrogation rights derived therefrom"); and Slocum ex rel. Nathan A., supra.
Other courts have applied reasoning consistent with that set forth in Ex parte Snow. See Hall v. Lalli, 194 Ariz. 54, 977 P.2d 776 (1999); Settle ex rel. Sullivan v. Beasley, 309 N.C. 616, 308 S.E.2d 288 (1983); Commonwealth ex rel. Gray v. Johnson, 7 Va.App. 614, 376 S.E.2d 787 (1989); and In re paternity of J.F., 205 Wis.2d 510, 557 N.W.2d 84 (Ct.App.1996). See also S.O.V. v. People ex rel. M.C., 914 P.2d 355 (Colo.1996) (holding that a child was not in privity with the State, which had pursued a prior paternity action, when the paternity statute required that the child be made a party to any paternity proceeding); G.E.B. v. S.R.W., 422 Mass. 158, 661 N.E.2d 646 (1996); Johnson v. Norman, 66 Ohio St.2d 186, 421 N.E.2d 124 (1981) (holding that no privity existed between child and mother, who had pursued a prior paternity action that was dismissed with prejudice); State ex rel. Cihlar v. Crawford, 39 S.W.3d 172 (Tenn.Ct. App.2000); and State Dep't of Health and Human Servs. ex rel. Cline v. Pentasuglia, 193 W.Va. 621, 457 S.E.2d 644 (1995).
In my opinion, the doctrine of res judicata or that of collateral estoppel should be applied when there has been a prior trial on the merits in a paternity proceeding, at least to the extent of child-support issues in which the interests of the party bringing the prior action (who has a legal obligation to support the child) and those of the child, clearly coincide. This court, however, is bound by the decision of our Supreme Court in Ex parte Snow. I therefore must agree with the main opinion that the child's paternity action is not barred by those doctrines.
As for the question of to whom the accrued child support in this case should be paid, I agree that, even if there is disagreement between the custodial parent and her adult child in this regard, that is an issue for the two of them to resolve and not one in which the noncustodial parent has any stake. Cf. Semple School for Girls v. Yielding, 16 Ala.App. 584, 586, 80 So. 158, 160 (1918) (comparing the rights to certain property as between a parent and a child with the interests of the child in that property as against third parties in the context of a conversion action).
BRYAN, J., concurs.
NOTES
[1] Because the paternity action filed on behalf of Crystal was commenced before July 1, 1997, when the Alabama Legislature amended § 26-17-20(b), Ala.Code 1975, to eliminate the right to a jury trial in paternity actions, Harris's demand for a jury trial, which the trial court granted, was proper. See H.E.T. v. State ex rel. C.D.L., 883 So.2d 706, 709 n. 3 (Ala.Civ.App.2003).
[2] Since the decision in E.J.B., a few other courts have held that the doctrine of res judicata would not bar the child's action, largely as a result of changes in paternity statutes. See discussion, infra.