945 So.2d 1048 (2005)
SHELBY COUNTY TREATMENT CENTER et al.
v.
Alan EDMONDSON et al.
2040205.
Court of Civil Appeals of Alabama.
October 21, 2005.
Rehearing Denied December 30, 2005.
*1050 G. Dennis Nabors and David E. Belser of Nabors Belser & DeBray, LLC, Montgomery, for appellants.
Mickey L. Johnson, Pelham, for appellees.
CRAWLEY, Presiding Judge.
Shelby County Treatment Center ("SCTC"), Susan Sidwell, Dr. Glen Archibald, and Frank Combs appeal from a judgment granting injunctive relief in favor of Alan Edmondson and 37 other individuals who allege that they are residents of Saginaw, Alabama. We reverse.
The record indicates that SCTC is a corporation whose officers and shareholders include Susan Sidwell, Dr. Glen Archibald, and Frank Combs. On October 21, 2003, SCTC filed an application with the State Health Planning and Development Agency ("SHPDA") for a certificate of need ("CON") to operate a methadone clinic[1] in Shelby County. The application stated that the proposed location of the clinic was Calera, Alabama, an incorporated municipality within Shelby County.
Pursuant to Ala. Admin. Code (SHPDA) Rule 410-1-7-.08, SHPDA notified the public that SCTC had applied for a CON to operate a methadone clinic in Shelby County and that it proposed to operate the clinic in Calera.[2] Between October 24, 2003 and January 21, 2004, SHPDA conducted a review of and held a public hearing on the application. No individual or entity filed a request to intervene in opposition to the application or to have the application assigned to an administrative law judge for a contested case hearing. See Ala. Admin. Code (SHPDA) Rule 410-1-8-.01 (establishing time limits for filing a *1051 contest of a CON application). On February 4, 2004, SHPDA granted SCTC's CON application.
After the CON was granted, SCTC was unsuccessful in locating suitable rental property or a lot for sale in Calera upon which to build its clinic. However, SCTC found a building site in Saginaw, an unincorporated community 2.5 miles north of Calera in Shelby County. On May 24, 2004, SCTC filed a request for a modification of the CON to relocate in Saginaw; the request was granted the same day. A May 6, 2004 article in The Birmingham News had reported the proposed change in location.
On May 20, 2004, Robert E. Owens, the District Attorney for the 18th Judicial Circuit, purporting to represent the State of Alabama as well as Alan Edmondson and 37 other residents of Saginaw, filed in the Shelby Circuit Court a complaint for injunctive relief, seeking to prevent the opening of the clinic in Saginaw or, in the alternative, to remand the cause to SHPDA for a public hearing on the propriety of locating the clinic in Saginaw. In their complaint, the plaintiffs asserted that they were denied their due-process rights to notice and a hearing because SCTC's "misrepresentation" as to the location of the clinic prevented them from discovering the true location of the clinic until the time for contesting the CON application had expired.
On May 25, 2004, the trial court issued a temporary restraining order ("TRO"), requiring SCTC to cease and desist from all actions designed to further the opening of a methadone clinic in Saginaw and setting the matter for an evidentiary hearing on the plaintiffs' motion for a preliminary injunction. In addition, the TRO determined
"that a public interest is affected by the matters alleged in plaintiffs' complaint, and that the District Attorney for Shelby County is a proper representative for the named plaintiffs and for the citizens of the State of Alabama in protecting such public interest."
On June 4, 2004, at a hearing on the motion for a preliminary injunction, Mickey Johnson, a lawyer in private practice, entered an appearance for the plaintiffs; the district attorney informed the trial court that Johnson was assisting him with the case. At the hearing on the motion for a preliminary injunction, the parties made legal arguments and submitted documentary evidence consisting of SCTC's CON application and the SHPDA file on the application; no testimony was presented.
On June 14, 2004, the trial court entered a lengthy order granting a preliminary injunction. In summary, the court determined that (1) SCTC's application for a CON to operate a methadone clinic in Calera "was done, procedurally, according to the controlling laws and regulations governing such applications," but that (2) SCTC had misrepresented its intent to locate the clinic in Calera, and that (3) SCTC's "decision . . . to locate [the clinic] in Saginaw, Alabama without first providing any form of public notice of such intent, deprive[d] the plaintiffs of their right to due process." The court concluded that "any certificate of need, or amendment or modification thereto, issued in contravention of the due process rights acknowledged herein is void and [SCTC was] enjoined from acting thereon."
After the hearing, but before the trial court ruled on the motion for a preliminary injunction, SCTC moved to dismiss the district attorney as the plaintiffs' counsel or, in the alternative, to join SHPDA as a party. The trial court set the motions for a hearing on July 19, 2004. The court denied both motions in open court at an August 9, 2004, hearing.
*1052 Testimony and documentary evidence were presented at hearings on August 9 and August 20, 2004. Although the plaintiffs presented legal arguments and cross-examined witnesses called by SCTC at both hearings, they called no witnesses and presented no evidence at either hearing.
On October 12, 2004, the trial court entered an order permanently enjoining SCTC from operating a methadone clinic in Saginaw. The order expressly adopted the findings of fact and conclusions of law in the May 25, 2004, order granting the TRO. The order issuing the permanent injunction states, in pertinent part:
"2. That all other remedies available to the plaintiffs by law have been circumvented as described herein, and that injunctive relief is the only adequate remedy remaining to the plaintiffs in this cause.
". . . .
"4. Additional evidence has been presented on a hearing for permanent injunctive relief. On the issue of conformity to the rules and regulations of the [SHPDA], the Court finds:
"(a) That due process requires notice to the public sufficient to allow them to be heard [in] a meaningful manner. A[CON] application made to the [SHPDA] is subject to the provisions of § 41-22-12, Code of Alabama, and can be made a contested case, thus invoking a number of procedural safeguards afforded citizens in the administrative process. It is incumbent, in the first instance, that sufficient, truthful information be provided to state agencies for public access and dissemination in order for citizens to accurately assess the impact that administrative decisions may have upon them. The failure to provide accurate information in a public application prohibits an interested person from determining the extent of such impact, thus precluding informed decisions on the degree to which procedural and substantive safeguards can and should be employed.
"(b) That a misrepresentation regarding the planned location of the [clinic] in the [CON] application . . . precluded plaintiffs from discovering those facts necessary to determine the degree by which they would be affected by any action taken on the application.
"(c) That this Court was not presented with, nor does it decide in this cause, the issue of whether the `policy' of SHPDA to identify only the county of location in its public notices is sufficient to satisfy due process. In the instant case, even if the proposed specific location on the application were made a part of the public notice, the affected community would have been misinformed, and in no better position to exercise their rights than if no notice were given. Therefore, it is not necessary for the Court to determine the sufficiency of the SHPDA notice policy to satisfy due process.
"5. The Court heard further evidence on whether the misrepresentation of the proposed location in the application was intentional. It is also unnecessary for the Court to make a factual finding on this issue. Sufficient notice to satisfy due process does not turn on whether misinformation is innocent or willful. To hold otherwise would be to subject the existence of recognized, fundamental rights to vague and nebulous standards."
On November 9, 2004, SCTC moved the trial court to supplement the record with a transcript of a CON Review Board ("CONRB") meeting on October 20, 2004, *1053 at which the Board members discussed a suggested change to Ala. Admin. Code (SHPDA) Rule 410-1-10.03, that would require approval of the CONRB for any project modification involving "a physical relocation of the facility to a location other than that designated in the application or CON." The trial court granted the motion to supplement.
Standard of Review
"The applicable standard of review depends on whether the trial court entered a preliminary injunction or a permanent injunction. A preliminary injunction is reviewed under an abuse-of-discretion standard, whereas a permanent injunction is reviewed de novo. Smith v. Madison County Comm'n, 658 So.2d 422, 423 n. 1 (Ala.1995)."
TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1241 (Ala.1999).
In TFT, Inc., the Alabama Supreme Court held that, notwithstanding the trial court's statement that it was issuing a preliminary injunction, the trial court had actually granted relief that had the effect of a permanent injunction because, the supreme court explained, the trial court had examined the merits of the case and had done more than preserve the status quo. In resolving the merits of the case, the trial court in TFT, Inc. had not been required to make credibility determinations about witnesses but had only to determine the legal effect of certain documentary evidencean invitation to bid on a State contract and the bid responses. Compare City of Dothan v. Eighty-Four West, Inc., 871 So.2d 54, 60 (Ala.Civ.App. 2002)(on application for rehearing)(Murdock, J., concurring specially):
"The decisions of both the trial court and the Alabama Supreme Court in TFT turned on an objective review of certain documents and the application of governing law to those documents. It does not appear from the Supreme Court's opinion in TFT, Inc., that ore tenus evidence was material (1) to the court's interpretation of the documents or (2) to the court's consideration of whether the threatened injury to the plaintiff outweighed the harm that the requested injunction may cause the defendant or whether granting the injunction would disserve the public interest. . . . Citing Smith v. Madison County Commission, 658 So.2d 422, 423 n. 1 (Ala.1995), the Supreme Court in TFT, Inc., therefore, applied a de novo standard of review. . . .
"At issue in Smith was a pure question of law. As the Supreme Court noted, the appeal presented `a single issue: Whether the Madison County Commission's statutory authority to enforce its building code ended through application of Alabama's "Sunset Act."' 658 So.2d at 423 (footnote omitted). Where the sole issue presented is a question of law, an appellate court's review is, indeed, de novo."
In the present case, as in TFT, Inc., the issue upon which the injunction was granted is a question of law: whether the plaintiffs were denied due process as a consequence of SCTC's requesting and receiving approval from SHPDA for a CON modification to relocate a methadone clinic in Saginaw without first giving the residents of Saginaw specific notice of the proposed relocation and an opportunity to be heard on the matter. Appellate review of the permanent injunction is, therefore, de novo. See TFT, Inc., supra; City of Dothan v. Eighty-Four West, Inc., supra.
The following questions of law and fact are undisputed. Section 22-21-260(7), Ala. Code 1975, defines a "health service area" as "[a] geographical area designated by the Governor, as being appropriate for effective *1054 planning and development of health services." Rule 410-1-2-.03, Ala. Admin. Code (SHPDA), states:
"[Health service] areas may vary according to the types of individual health services. In the absence of a designated geographical area for a particular service, the county in which the service is to be provided shall be deemed to be the health service area."
The State Health Plan does not designate a geographical area for methadone treatment. See Rule 410-2-4-.11(4), Ala. Admin. Code (SHPDA). For a methadone clinic, therefore, the county is the health-service area. Calera and Saginaw are both in Shelby County. During the application-review process, SHPDA had provided the public notice called for by Rule 410-1-7-.08, Ala. Admin. Code (SHPDA). SHPDA had no regulation requiring that any further notice be given to the residents of Saginaw when SCTC sought a modification of the CON to change the location of the clinic from Calera to Saginaw. SCTC's request for a modification was not required to be approved by the CONRB. Because the modification request fell below the financial threshold that would have triggered a review by the CONRB pursuant to Ala. Admin. Code (SHPDA) Rule 410-1-10-.03, the executive director of SHPDA was authorized to grant the modification request; he granted the request on the day it was made.

Misrepresentation
The trial court's order issuing the injunction was predicated on the following determinations: (1) that SCTC had misrepresented, in its CON application, the intent to locate in Calera; (2) that the plaintiffs had relied on that misrepresentation, that they had been led to believe that the clinic would not be located in Saginaw, and that they had taken no action to contest the CON; and (3) that the plaintiffs had been injured because SCTC obtained a project modification allowing it to locate the clinic in Saginaw without notice to or comment from the residents of Saginaw.
The record does not support the trial court's determinations with respect to misrepresentation, reliance, or the causation of the plaintiffs' alleged injury. On the issue of misrepresentation, the evidence was uncontroverted that, when it filed the CON application, SCTC intended to locate in Calera, had researched the Calera real-estate market, and had sought a rental facility or a building lot for sale in Calera. SCTC Executive Director Susan Sidwell testified that, when SCTC was having trouble finding a suitable site in Calera, she contacted SHPDA and was informed that the CON authorized SCTC to locate anywhere in Shelby County, after which she located a site for the clinic in Saginaw. There was no evidence in the record from which the trial court could have found that SCTC "misrepresented" the planned location of the clinic.[3]
With respect to the plaintiffs' alleged reliance on SCTC's CON application designating Calera as the location of the clinic, the plaintiffs offered no testimony that they had even been aware of SCTC's CON *1055 application listing Calera as the proposed site for the clinic, much less that they had relied on that representation in deciding not to oppose the CON application.
On the issue of the cause of the plaintiffs' alleged injury, the parties stipulated that
"the citizens of Saginaw could not have determined that this facility was going to be located in Saginaw, Alabama, by looking at [the SHPDA file concerning SCTC's CON application] until after the modification was obtained."
SCTC presented uncontradicted evidence, however, indicating that any citizen concerned about the opening of a methadone clinic in Shelby County could have contacted SHPDA and learned that the CON was granted for the county at large, that the clinic could request a project modification to locate somewhere in the county other than Calera, and that such requests were routinely granted by SHPDA. Cf. Save Our Dunes v. Alabama Dep't of Envt'l Mgmt., 834 F.2d 984, 989-90 (11th Cir.1987)(holding that environmental groups had no due-process right to specific notice of decisions on coastal building-permit applicationsas opposed to notice of the existence of pending applications that was provided to the public generallybecause "persons who inquire as to the status of particular applications can be informed," and concluding that "[o]nce Alabama gives good notice of a building permit application, Alabama can properly require persons concerned about a building application . . . to initiate reasonable steps to keep themselves informed as to the status of the proceedings about which they are curious"). The record contains no evidence to support the trial court's finding that "a misrepresentation regarding the planned location of the [clinic] in the [CON] application . . . precluded plaintiffs from discovering those facts necessary to determine the degree by which they would be affected by any action taken on the application." (Emphasis added.)
Although the issue was not raised by SCTC, the plaintiffs' "misrepresentation" theory alleging a deprivation of their due-process rights is fundamentally flawed because it attempts to exonerate SHPDA, a state agency, and to assign responsibility for the alleged due-process violation to SCTC, a private actor. Likewise, the trial court's judgment expressly states that the court did not decide whether SHPDA's rules and regulations were "sufficient to satisfy due process" guarantees. Instead, the trial court determined that SCTC's conduct precluded the plaintiffs from being heard on the issue of locating a methadone clinic in Saginaw until the time for objection under SHPDA's rules had expired.
"The Due Process Clause provides that `[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law.' U.S. Const. amend. XIV, § 1. In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held:
"`[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, or property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act. . . .
"`. . . . '
"DeShaney, 489 U.S. at 195-97, 109 S.Ct. at 1003."
Wright v. Bailey, 611 So.2d 300, 304 (Ala. 1992) (emphasis added). The due-process violation alleged by the plaintiffs and made the basis of the trial court's judgment was not attributable, as a matter of law or fact, to the actions of SCTC. Any deprivation of due process suffered by the plaintiffs could *1056 only be ascribed to SHPDA, the state agency whose regulations allowed its executive director to approve a CON modification request for the relocation of a proposed facility to a place other than that designated in the original CON application without specific notice to the residents of that place. Therefore, the trial court erred by denying SCTC's motion to join SHPDA as a party under Rule 19(a), Ala. R. Civ. P. That rule states, in pertinent part:
"A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties. . . . "
Although SCTC raised the joinder issue in the trial court, it did not argue the joinder issue on appeal. Nevertheless, "`[f]ailure of the plaintiff or the trial court to add a necessary and indispensable party, and of the defendant to raise the absence of such party in his or her pleadings, does not necessarily dispose of the issue. This defect can be raised for the first time on appeal by the parties or by the appellate court ex mero motu.'
"J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 850 (Ala.1981)."
Chicago Title Ins. Co. v. American Guar. & Liab. Ins. Co., 892 So.2d 369, 371 (Ala. 2004) (emphasis added).
"A permanent injunction will be granted when there exists a clear, specific, legal right requiring protection and the injunction is necessary to prevent irreparable injury and there is no adequate remedy at law." Gulf House Ass'n, Inc. v. Town of Gulf Shores, 484 So.2d 1061, 1064 (Ala.1985). The plaintiffs failed to establish that SCTC denied them due process of law.
"To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest. Clark Constr. Co. v. Pena, 930 F.Supp. 1470 (M.D.Ala. 1996). The elements required for a preliminary injunction and the elements required for a permanent injunction are substantially similar, except that the movant must prevail on the merits in order to obtain a permanent injunction, while the movant need only show a likelihood of success on the merits in order to obtain a preliminary injunction. Pryor v. Reno, 998 F.Supp. 1317 (M.D.Ala.1998)."
TFT, Inc. v. Warning Systems, Inc., 751 So.2d at 1242. The trial court erred in issuing the injunction because the plaintiffs did not demonstrate success on the merits of their due-process claim.

Representation by the District Attorney
SCTC argues that the trial court erred by denying its motion to remove the district attorney as counsel for the plaintiffs. Section 12-17-184, Ala.Code 1975, states the powers and duties of district attorneys. Subsection (3) of § 12-17-184 provides that it is the duty of the district attorney, within the circuit for which he or she is elected or appointed, "[t]o prosecute and defend any civil action in the circuit court in the prosecution or defense of which the state is interested." (Emphasis added.) Subsection (11) of § 12-17-184 provides:
"All district attorneys and all full-time assistant district attorneys shall devote their entire time to the discharge of the duties of their respective offices, and each and every one of the officers are prohibited from practicing law, directly or indirectly, in any court of this state or of the United States, or in any other *1057 manner or form whatsoever, except in the discharge of the official duties of their offices."
Notwithstanding the fact that the complaint for injunctive relief was nominally prosecuted in the name of the State of Alabama (as well as the 38 named plaintiffs alleging that they were resident citizens of Saginaw), it is apparent that the State of Alabama was not interested in the prosecution of this civil action, as the term "interested" is used in § 12-17-184(3). All of the cases in the annotations to that statute dealt with civil actions in which the State of Alabama was a party to a civil action. Because the State was not "interested" as a plaintiff in this civil action, the District Attorney had no authority to represent the plaintiffs. See Aldridge v. Capps, 56 Okla. 678, 156 P. 624 (1916).
In Aldridge, the court construed a provision of the Oklahoma Code that prohibited a district attorney from engaging in the private practice of law except in the official discharge of his duties. Cf. Simpson v. Alabama State Bar, 294 Ala. 52, 55, 311 So.2d 307, 309 (1975)(stating that "[t]he [Alabama] Code prohibits a district attorney from practicing law except in the discharge of his duties"). The Aldridge court held that when a prosecuting attorney practices law in violation of the statute and over the objection of his adversary, he is in the same position "as though he had never been admitted to practice law" and if he recovers a judgment, the case will be reversed on appeal. 56 Okla. at 680, 156 P. at 625.
Because a private attorney assisted with the instant case in the trial court and filed the appellees' brief on appeal to this court, and because we are reversing the judgment on other grounds, we pretermit discussion of the result that might obtain under different circumstances.
The judgment of the Shelby Circuit Court is reversed, and the injunction is dissolved.
REVERSED.
BRYAN, J., concurs in the rationale in part and concurs in the result, with writing, which PITTMAN, J., joins.
THOMPSON, J., concurs in the result only, with writing.
MURDOCK, J., dissents, without writing.
BRYAN, Judge, concurring in the rationale in part and concurring in the result.
I concur in the rationale of the main opinion dealing with the "Standard of Review" and "Misrepresentation" issues. I concur in the result with regard to that portion of the opinion entitled "Representation by the District Attorney."
PITTMAN, J., concurs.
THOMPSON, Judge, concurring in the result only.
This case raises issues, especially concerning policy and the adequacy of SHPDA's regulations, that cause me great concern. However, those issues were not properly presented to the trial court or adequately argued on appeal. Therefore, I am constrained to concur in the result only in this matter.
NOTES
[1] "Methadone is an opioid agonist medication used to treat heroin and other opiate addiction. Methadone reduces the craving for heroin and other opiates by blocking receptor sites that are affected by heroin and other opiates." Ala. Admin. Code (SHPDA) Rule 410-2-4-.11(4)(a).
[2] SHPDA sent press releases to three television stations and three newspapers serving Shelby County: WTVM-Channel 13(NBC); WIAT-Channel 42(CBS); WBRC-Channel 6(Fox); The Birmingham News; The Birmingham Post-Herald; and The Shelby County Reporter. SHPDA also notified area health-care facilities and agencies as well as the mayor of Calera, a member of the Calera City Council, and a member of the Alabama House of Representatives from Shelby County. SHPDA received letters of opposition from the Shelby County Commission, the Pelham Police Chief, the Shelby County Sheriff, the Shelby County District Attorney, and the Shelby County Chiefs of Police Association.
[3] Among the materials submitted with SCTC's application were over 100 statements or letters in support of the application. The evidence was undisputed that with respect to nine pre-printed letters signed by citizens of Shelby County and expressing support of the application, the citizens had been misled about what they were signing and that one signature was, in fact, forged. The parties stipulated that SCTC neither solicited nor knowingly submitted the false or forged letters. This evidence and the stipulation concerning it do not support the finding that SCTC "misrepresented" its intent to locate in Calera.