Clara Dunn filed a motion to enforce a consent judgment against Claris Rowe on July 9, 2004, alleging that Rowe had failed to comply with the terms of that consent judgment. The trial court, after ore tenus proceedings, and after visiting the real property involved in this case, entered an order holding that Rowe had violated a *Page 147 
portion of the consent judgment. Rowe timely appealed, whereupon this case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
The facts relevant to this case are simple. In 1999 Dunn and her husband sued Rowe, their neighbor, seeking an injunction to alleviate several problems that the Dunns alleged stemmed from a chicken farm Rowe maintained on his property.[1] The trial court entered a preliminary injunction, finding that the odor the Dunns complained about did not constitute a nuisance but that other aspects of the chicken farm's operation did. The court found, in its order granting the preliminary injunction, that the Dunns' chronic respiratory problems were caused by the operation of the chicken houses so close to their residence. Large exhaust fans used by Rowe to cool the chicken houses, the court determined, were blowing an inordinate amount of dust and chicken feathers onto the residential property of the Dunns, located across the street from Rowe's property. The trial judge noted in his order granting the preliminary injunction that a visit to the property in question revealed that there was "a great lack of ground cover in the areas where the exhaust fans are located and very poor foliage in the form of a buffer zone between the chicken houses and the road that separates the chicken houses from the [Dunns'] residence."
The trial judge noted in the order granting the preliminary injunction that he was raised working on a farm in rural Marshall County. He remarked in the order granting the preliminary injunction that he had several neighbors in his childhood community that raised chickens. Consequently, it appears that the trial judge in this case was particularly well suited to resolve the dispute. The trial court's preliminary injunction did not require Rowe to cease operations, but it did require the parties to submit a plan to the court that would describe how Rowe would abate the nuisance.
On January 10, 2002, the trial court entered a consent judgment incorporating the provisions of the preliminary injunction and implementing a permanent injunction. The portions of the consent judgment relevant to this case provide:
 "Section I. This order follows the prior order of November 10, 2000 (Order Granting Preliminary Injunction) and is to be read in combination with and in reference to that order.
 "Section II. [Rowe] agrees to undertake the following measures to abate the nuisance of dust and chicken feathers on [his] property:
 "A. Erection and Maintenance of a Physical Barrier.
 "1. [Rowe] agrees to plant and maintain vegetation in accordance with the sketch attached hereto as Exhibit A, consisting of Leyland cypress trees in two staggered rows, autumn olive shrubs in two staggered rows, and Bermuda grass as ground cover from the edge of the chicken houses to the tree/ shrub border.
 "2. [Rowe] further agrees to erect a screen mesh barrier 12 feet high, running in the dimensions shown on Exhibit B, which shall be located not more than 20 feet from the edge of the side of the chicken houses which the screen runs parallel to, for a distance of 36 feet down both sides (and 60 feet across) the northern-most two houses as shown on *Page 148 Exhibit B. The screen mesh is to be of the same kind and quality as the sample attached to Exhibit B.
 "3. [Rowe] further agrees to install air deflector hoods as shown on Exhibit C on all fans on the four houses closest to the [Dunns'] property.
 "4. The entire physical barrier is to be completely erected within 60 days of the date of this order."
(Emphasis added.)
On July 9, 2004, Dunn moved the trial court to enforce the January 10, 2002, consent judgment. Dunn alleged that Rowe was not complying with various terms of the consent judgment. In particular Dunn claimed that the screens Rowe had constructed around the chicken houses were often down on the ground and thus were ineffective in preventing chicken feathers and dust from blowing onto her property.
The trial court conducted ore tenus proceedings on Dunn's motion and also visited the property. The trial court's order on Dunn's motion states in relevant part:
 "This cause was heard on January 7, 2005 on [Dunn's] post judgment motion to enforce this Court's Judgment. Both parties were present and represented by counsel. After considering the evidence presented and after making a visit to the property and inspecting the same, it is ORDERED as follows:
 "1. [Rowe] has willfully allowed the screen mesh barrier to remain down for prolonged periods of time,. [Rowe] shall henceforth not allow the mesh barrier to be down for more than 4 days at any one interval.
 "2. The Court finds [Rowe] has not violated any other portion of the judgment in this case.
 "3. The Court also notes that the fans in question are angled downward and are not set vertically within the fan hood.
 "4. [Dunn] is awarded an attorney fee of $1,000.00 and a judgment is entered in favor of [Dunn] and against [Rowe] for said sum.
 "5. Costs taxed to [Rowe].
 "DONE this 7th day of January 2005."
Although the trial court called Dunn's "motion to enforce consent judgment and/or other relief a "post judgment" motion, in actuality the motion instigated a new, independent action and was assigned a new case number. On appeal, Rowe argues that the trial court's order enforcing its prior judgment and amending the permanent injunction to prohibit him from leaving the mesh barriers down for more than four days at a time adversely affected his rights and was unjust. Specifically, Rowe asserts that the court's judgment will cause him harm because repairing the screens around the chicken houses when chickens are present will "spook" his chickens, causing them to run to one side of the chicken houses, pile up inside, smother, and die. Rowe testified that the most chickens he has lost when they "pile up" has been 300. Rowe operates at least 4 chicken houses that hold 20,000 to 25,000 "broilers," i.e., chickens, each.
 "We note that under the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. Federal Home Loan Mortgage Corp. v. Bates, 644 So.2d 925
(Ala. 1994). The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn *Page 149 
from the evidence. Ex parte Kent Corp., 641 So.2d 242 (Ala. 1994). The reason for giving such deference to the trial judge's findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses' manner and demeanor and has the better opportunity to pass upon the credibility of their testimony. Charles Israel Chevrolet, Inc. v. Walter E. Heller Co., 476 So.2d 71 (Ala. 1985)."
Ex parte Pielach, 681 So.2d 154, 154-55 (Ala. 1996). However, to the extent our review concerns only legal issues and not factual determinations, we note that a permanent injunction is reviewed de novo. Shelby County Treatment Ctr. v.Edmondson, 945 So.2d 1048, 1053 (Ala.Civ.App. 2005);City of Dothan v. Eighty-Four West, Inc., 871 So.2d 54,60 (Ala.Civ.App. 2003) (Murdock, J., concurring specially in overruling of application for rehearing); see also TFT, Inc.v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala. 1999). "To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest."751 So.2d at 1242 (citing Clark Constr. Co. v. Pena,930 F.Supp. 1470 (M.D.Ala.1996)). Additionally, "[t]he power of a court to enforce its valid orders and judgments is inherent, and it may take such legal steps as are necessary or expedient to render them binding and operative." Jones v. City of Opelika,242 Ala. 24, 27, 4 So.2d 509, 512 (1941) (citing 35 Am.Jur. 126, § 390).
In this case, the trial court heard oral testimony and even went so far as to visit the property in question. The trial court then specifically found that Rowe had wilfully allowed the screen-mesh barrier to remain down for prolonged periods. As noted above, the court ordered Rowe not to allow the barrier to be down for more than four days at any one interval. Rowe argues that this order should be reversed because it adversely affects his rights and is unjust. Rowe cites three cases for this proposition, Young v. Reddock, 437 So.2d 1247, 1249
(Ala. 1983), Textron, Inc. v. Whitfield, 380 So.2d 259
(Ala. 1979), and Nunn v. Stone, 356 So.2d 1212
(Ala.Civ.App. 1978).
There are several reasons why we should affirm the trial court's judgment. First, the cases Rowe cites relate to Rule 60(b), Ala. R. Civ. P., postjudgment motions; however, this case does not involve a Rule 60(b) motion. The purpose of Rule 60(b) is to "relieve a party or a party's legal representative from a final judgment. . . ." Rule 60(b), Ala. R. Civ. P. In this case, Dunn moved the court to enforce a judgment, and neither Dunn nor Rowe moved the court for relief from a judgment. Consequently, the cases cited by Rowe advance an argument that is of little help to him in determining under what specific circumstances a trial court may have exceeded its discretion in deciding to enforce a previous judgment. "Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.'" Henderson v. Alabama A MUniv., 483 So.2d 392, 392 (Ala. 1986) (quoting Gibson v.Nix, 460 So.2d 1346, 1347 (Ala.Civ.App. 1984)); see also Rule 28(a)(10), Ala. R.App. P.
The second reason to affirm the trial court's judgment is that Dunn has met all the elements entitling her to a permanent injunction. Dunn demonstrated success on the merits of her claim that Rowe was not complying with the consent judgment *Page 150 
when the trial court found that as a matter of fact the screen mesh had been left down for prolonged periods of time.
Considering the trial judge's farming background in rural Alabama, it is likely that he was acutely aware of the possibility that Rowe's chickens could become spooked if Rowe were to comply with the consent judgment and that he balanced that risk against the risk of respiratory ailments Dunn would suffer if Rowe did not comply with the consent judgment. The record indicates that out of the approximately 80,000 to 100,000 "broilers" Rowe could house in his chicken houses, the greatest number of chickens he ever lost at one time was 300. The trial court evidently weighed that loss against Dunn's ailments, which included chronic respiratory problems directly related to dust and feathers blowing onto her property from Rowe's property. Furthermore, the trial judge's ability to properly balance these competing interests was aided by his visit to the property in question. In this case, it appears that the substantial threat of Dunn suffering irreparable injury if the injunction was not granted outweighs the harm that Rowe may suffer because of the injunction.
Finally, no evidence was presented to indicate that the injunction would disserve the public interest. Accordingly, we conclude that the injunction in this case does not harm the public.
Under these circumstances, the trial judge's discretion to fashion an appropriate remedy to enforce the consent judgment deserves particular deference. Additionally, the remedy the trial court imposed does not appear to be unjust. Consequently, we affirm the judgment of the trial court.
Dunn also requested that this court award damages, pursuant to Rule 38, Ala. R.App. P., on the basis that this is a frivolous appeal. We deny that motion.
MOTION DENIED; AFFIRMED.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.
[1] In the initial case, Dunn and her husband were both plaintiff's. Mr. Dunn is not a party to this case, because he had died by the time Mrs. Dunn moved to enforce the consent judgment on July 9, 2004.